IN THE UNITED STATES DISTRICT COURT
FOR KANSAS

IN THE MATTER OF THE SEARCH OF
SAMSUNG CELLULAR TELEPHONE,
MODEL NUMBER SM-G960U, SERIAL
NUMBER 4a51485531453498,
CURRENTLY LOCATED AT JEFFERSON
COUNTY KANSAS SHERIFF'S OFFICE,
1360 WALNUT STREET, OSKALOOSA,
KANSAS 66066.

Case No. 21-mj-5001-ADM

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Kevin Lee Mills of the Federal Bureau of Investigation, the undersigned

Affiant, being first duly sworn, state the following is true and correct to the best of my

knowledge and belief.

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property as

described in Attachment A —an electronic device— which is currently in law enforcement

possession, and the extraction from that property of electronically stored information described

in Attachment B.

2.      I have been a Special Agent with the FBI since November 2018. I am assigned to a

resident agency that investigates economic crimes along with other violations of Federal law. I

have received training regarding the investigation of fraud schemes that involve the use of cellular

phones and electronically stored evidence. I have participated in the execution of numerous

Federal search warrants.

3.     Through my training and experience, I know that individuals commonly use their cellular telephones to communicate with other individuals through various means to include, but not limited to, voice calls, text messages, video calls, video messages, e-mails, instant messages, picture messages, and voice mails. I also know through my training and experience that individuals engaged in criminal activities will use cellular telephones and other mobile devices to communicate with other individuals involved in these illegal activities. These individuals will use cellular telephones in both the planning and commission of their various criminal activities. They will also use cellular telephones to assist in the furtherance of their crimes after the fact to include evading arrest and/or punishment for crimes they have committed. Often times individuals engaged in illegal activities will use the many capabilities of their cellular telephones to document their crimes to include but not limited to photographs and/or videos of themselves or others committing said crimes.

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.     The property to be searched is a Samsung cellular telephone, model number SM-G960U, serial number 4a51485531453498, hereinafter referred to as, "The Device." The Device is currently located at the Jefferson County Sheriff's Office, 1360 Walnut Street, Oskaloosa, Kansas 66066.

6.     The applied-for warrant would authorize the examination of The Device for the purpose of identifying electronically stored data particularly described in Attachment B.

2

## BACKGROUND ON THE UNEMPLOYMENT SYSTEM

### Unemployment Insurance System

7.　In the State of Colorado, the agency responsible for overseeing the disbursement of unemployment insurance is the Colorado Division of Unemployment Insurance (CODUI) which administers unemployment benefits on behalf of the Federal government, specifically the United States Department of Labor (DOL).  The DOL funds all substantive and administrative costs for the CODUI.

8.　In the State of Illinois, the agency responsible for overseeing the disbursement of unemployment insurance is the Illinois Department of Employment Security (ILDES) which administers unemployment benefits on behalf of the Federal government, specifically the DOL. The DOL funds all substantive and administrative costs for the ILDES.

9.　In the State of Ohio, the agency responsible for overseeing the disbursement of unemployment insurance is the Ohio Office of Unemployment Insurance (OHOUI) which administers unemployment benefits on behalf of the Federal government, specifically the DOL. The DOL funds all substantive and administrative costs for the OHOUI.

10.　In the State of Washington, the agency responsible for overseeing the disbursement of unemployment insurance is the Employment Security Department, Washington State (ESDWA) which administers unemployment benefits on behalf of the Federal government, specifically the DOL. The DOL funds all substantive and administrative costs for the ESDWA.

### Pandemic Unemployment Assistance under the CARES Act

11.　On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES

3

Act), which the President signed into law on March 27, 2020. The CARES Act provides over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

12.    Prior to the enactment of the CARES Act, to be eligible for Unemployment Insurance (UI) administered by CODUI, ILDES, OHOUI and ESDWA, a person must have been employed and worked in the respected state and received at least a certain amount of wages from an employer and was unemployed due to no fault of their own in order to file a UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

13.    The CARES Act established a new program – Pandemic Unemployment Assistance ("PUA") -- to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular UI benefits including business owners, self-employed workers, independent contractors, and those with a limited work history who are out of business or have significantly reduced their services as a direct result of the pandemic. UI benefits provided under the PUA program are sometimes referred to as PUA benefits.

- The Pandemic Unemployment Assistance ("PUA") program is a separate benefit program designed to cover many people who do not qualify for regular unemployment during the COVID-19 pandemic. This includes self-employed individuals, independent contractors, and part-time workers affected by COVID-19.

- The Pandemic Emergency Unemployment Compensation ("PEUC") program is an extension of regular unemployment benefits that offers unemployment benefits up to thirteen (13) weeks beyond the number weeks available from regular unemployment. The CARES Act made these PEUC benefits available to the unemployed between March 29, 2020, and December 26, 2020.

- The Federal Pandemic Unemployment Compensation ("FPUC") program provides an extra $600 per week on top of regular or PUA unemployment payments between March 29, 2020, and July 25, 2020. The FPUC is available for everyone on regular unemployment our PUA, except those on training benefits.

**Small Business Administration Paycheck Protection Program**

14.     Also included in the CARES Act established On March 27, 2020, the Small Business Administration (SBA) received funding and authority through the CARES Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID–19 emergency.  The new program titled the "Paycheck Protection Program." provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program.

## BACKGROUND OF THE INVESTIGATION & PROBABLE CAUSE

15.     The following evidence establishes probable cause to believe the following crime(s) have been or are being committed and that probable cause exists to believe that which is sought to be searched for and seized described with particularity and set forth below in Attachment B as evidence, fruits, and/or instrumentalities of the crime(s) and the evidence of probable cause to believe that such are now located in the premises/property to be searched as described in Attachment A.

   a.  18 U.S.C. §§ 1343 – Wire Fraud

   b.  18 U.S.C. §§ 1040 – Fraud in Connection with Major Disaster or Emergency Benefits

16.     The Device is currently in storage at the Jefferson County Sheriff's Office, located at, 1360 Walnut Street, Oskaloosa, Kansas 66066.  In my training and experience, I know The Device has been stored in such a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when The Device first came into the possession of the Jefferson County Sheriff's Office.

5

17.     On September 4, 2020, Officers of the Perry Police Department were requested to respond to the First State Bank & Trust located in Perry, Kansas. Officers met with a bank employee who alerted officers of suspicious financial activity pertaining to First State Bank & Trust customer, **Terie Lee Elkins, date of birth March 12, 1960**, hereafter referred to as, "The Subject."

18.     The bank employee stated that between May 11, 2020 and August 7, 2020, over $113,000.00 in unemployment benefits had been electronically deposited into the Subject's account, to include a SBA loan of approximately $79,000.00.

19.     The bank employee stated since the depositing of the funds, The Subject had withdrawn approximately $62,000.00 in cash. Due to the suspicious nature of the deposits and the suspicious nature of the cash withdraws, the Subject's account was frozen.

20.     Officers then made contact with The Subject and conducted a non-custodial interview. During the interview The Subject stated she was in contact with an individual known only to her by the first name, "Dennis" whom she met on-line. The Subject had never met Dennis in person, nor did she know his last name. Dennis would deposit funds into her First State Bank & Trust account, instruct her to withdraw cash, package, and ship the cash via Federal Express. Dennis provided these instructions via text message. The Device was utilized to send and receive text messages with "Dennis."

21.     The Subject accompanied Officers to First State Bank & Trust where she provided Officers with a copy of her bank statements. The Subject also consented to Officers searching The Device. Captain George Welch, Jefferson County Sheriff's Department, conducted a preliminary review of the Device on September 10, 2020, at approximately 11:53 A.M. At the conclusion of the review, the Device was seized and entered into evidence.

22.     Officers then notified The Federal Bureau of Investigations (FBI) and U.S. Department of Labor, Office of Inspector General (DOL/OIG) and requested investigative assistance. Through a non-custodial interview of the Subject and review of financial records, the source of the suspicious deposits in The Subject's First State Bank & Trust Account were identified as UI benefits under the PUA provision of the federal CARES Act. These transactions included deposits from the States of Colorado, Illinois, Ohio, and Washington. Records also indicated the deposit of a SBA loan of approximately $79,000.00.

23.     Investigators have obtained evidence that on or about May 2020 to August 2020, The Subject received UI benefit payments and SBA Loan payments in the name of other individuals into her First State Bank & Trust account located in Perry, Kansas. When the UI claims were filed and submitted in their respective States, the UI application(s) provided The Subject's First State Bank & Trust account information, ultimately resulting in the UI and SBA funds being electronically deposited into The Subject's account.

24.     During the interview, The Subject stated she had not submitted UI claims in the states in which the funds were disbursed, nor did she own a small business, nor did she ever file for a SBA loan.

25.     During the non-custodial interview, The Subject stated she communicated with "Dennis" via The Device from approximately 2017 to approximately when it was seized by Law Enforcement Officers on September 4, 2020. The Subject detailed how she would receive text message communications on The Device from "Dennis" instructing her to withdraw a certain amount of cash from her account. "Dennis" also provided instructions via text message communications on The Device to what address The Subject was to mail shipments of cash.

7

26.     Your affiant respectfully requests that a Search Warrant issue authorizing the

search of the Device fully described in Attachment A and seizure of the property fully described

in Attachment B.

## TECHNICAL TERMS

27.     Based on my training and experience, I use the following technical terms to

convey the following meanings:

   a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular

       telephone) is a handheld wireless device used for voice and data communication

       through radio signals.  These telephones send signals through networks of

       transmitter/receivers, enabling communication with other wireless telephones or

       traditional "land line" telephones.  A wireless telephone usually contains a "call

       log," which records the telephone number, date, and time of calls made to and

       from the phone.  In addition to enabling voice communications, wireless

       telephones offer a broad range of capabilities.  These capabilities include: storing

       names and phone numbers in electronic "address books;" sending, receiving, and

       storing text messages and e-mail; taking, sending, receiving, and storing still

       photographs and moving video; storing and playing back audio files; storing

       dates, appointments, and other information on personal calendars; and accessing

       and downloading information from the Internet.  Wireless telephones may also

       include global positioning system ("GPS") technology for determining the

       location of the device.

   b.  Digital camera:  A digital camera is a camera that records pictures as digital

       picture files, rather than by using photographic film.  Digital cameras use a

variety of fixed and removable storage media to store their recorded images.

Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader. Removable

storage media include various types of flash memory cards or miniature hard

drives. Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to

photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a

handheld digital storage device designed primarily to store and play audio, video,

or photographic files. However, a portable media player can also store other

digital data. Some portable media players can use removable storage media.

Removable storage media include various types of flash memory cards or

miniature hard drives. This removable storage media can also store any digital

data. Depending on the model, a portable media player may have the ability to

store very large amounts of electronic data and may offer additional features such

as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its

current location. It often contains records the locations where it has been. Some

GPS navigation devices can give a user driving or walking directions to another

location. These devices can contain records of the addresses or locations involved

in such navigation. The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite

contains an extremely accurate clock. Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed

10

properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

28.     Based on my training and experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

30.     There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been

11

downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

12

31.   *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a electronic device is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

13

     e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

     a.  The data extraction process will be performed by the Topeka Police Department, which has two detectives highly trained in extracting information from cellular telephones as it relates to criminal investigations.

33.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in Law Enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

14

## CONCLUSION

34.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of The Device described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

Kevin Lee Mills
Special Agent
Federal Bureau of Investigation
Topeka, Kansas Resident Agency

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
by telephone this 7th day of January, 2021.

HONORABLE ANGEL D. MITCHELL
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

The property to be searched is a Samsung cellular telephone, model number SM-G960U, Serial Number 4a51485531453498, hereinafter referred to as, "The Device." The Device is currently located in evidence at the Jefferson County Sheriff's Office, 1360 Walnut Street, Oskaloosa, Kansas 66066.

This warrant authorizes the forensic examination of The Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.     All records on the Device described in Attachment A that relate to violations of

18 U.S.C. §§ 1343, and involve Terie Lee Elkins and an Unidentified Subject known as,

"Dennis", including:

  a.  All records on The Device described in Attachment A that relate to violations of

   18 U.S.C. § 1343 [Wire Fraud], and involve since the date and time that Terie Lee

   Elkins acquired/or had access to  The Device, including:

      1. Lists of contacts and subsequent identifying information;

      2. Photographs relating to, United States Currency, shipping labels and
         receipts;

      3. Any information related to co-conspirators (including names, addresses,
         telephone numbers, or any other identifying information);

      4. Any and all communication in the furtherance of the fraud scheme
         including internet messages and text messages;

      5. All bank records, checks, credit card bills, account information, and other
         financial records stored on The Device.

      6. Any and ALL communications received and outgoing involving "Dennis"
         and/or additional co-conspirators.

  b.  Evidence of user attribution showing who used or owned The Device at the time the

   things described in this warrant were created, edited, or deleted, such as logs,

   phonebooks, saved usernames and passwords, documents, and browsing history.

2